## Ex Parte Mary E. Fuller.

Decided December 10, 1909.

**1.—Final Judgment—Appeal.**

Whether a judgment disposing of the matter in controversy is final or only
interlocutory is not to be determined by the question whether or not appeal will
lie from the ruling.

**2.—Same—Habeas Corpus—Custody of Child.**

A judgment rendered by the district judge in chambers on habeas corpus

denying to relator the right to the custody of a minor was res adjudicata as to the rights of the parties upon the facts as they then existed.

### 3.—Same—Case Stated.

Relators obtained writ of habeas corpus from the district judge to obtain the custody of their minor child from the hands of respondent. The writ was filed in the District Court of H. County, where all the parties resided, the proceedings entered on the docket as a cause in that court, and respondents filed answer therein. On hearing by the judge in chambers, in another county of the district, the facts were found against relators and the minor remanded to the charge of respondents. About one year later relators filed an amended application for the writ, setting up facts as entitling them to the custody of the minor not arising since the former hearing. Respondents pleaded the judgment therein as an adjudication of the matters so presented. Held, that the plea was properly sustained.

#### ON REHEARING.

### 4.—Habeas Corpus—Action—Court or Judge.

Relators who began proceedings to determine their right to the custody of a minor child by application to the district judge for habeas corpus, could not, by filing the writ with the clerk of the court and having the cause docketed as a suit therein, convert the proceeding into a civil action, to be tried in that court and at a regular term. They had chosen to proceed before the judge, not the court, and by a form of action determinable in chambers.

### 5.—Same—Trial by Jury.

Relators in habeas corpus proceedings could not complain of a denial of right to a trial by jury where they made no demand for one. And it seems that, choosing such form of proceeding, they had no right to demand a jury trial therein. Pittman v. Byars, 51 Texas Civ. App., 83, followed.

Appeal from the District Court of Harrison County. Tried below before Hon. W. C. Buford.

*Y. D. Harrison*, for appellants.

No brief for appellee reached the reporter.

WILLSON, Chief Justice.—On the application of Ellen Fuller, alleging that she was the mother, and therefore entitled to the control and custody of Mary E. Fuller, a girl about fourteen years of age, and further alleging that said Mary E. Fuller was illegally restrained of her liberty by Aaron and Lucindy Graham, Hon. W. C. Buford, judge of the Fourth Judicial District, issued a writ of *habeas corpus*, directing the sheriff of Harrison County, where said Mary E. Fuller was alleged to be, to take and bring her before him on May 9, 1908—"to be dealt with according to law," the writ recited. In the meantime, to wit, on April 27, 1908, Aaron and Lucindy Graham filed an answer to the application for the writ, in which they alleged that four or five years before the writ was issued the relator and the father of the child had placed her with them; that they had become attached to her; that they were capable of doing so and were willing to provide for, maintain and educate the child; that her parents had permanently separated and were living apart from each other, and that the relator was "mentally, physically, morally and financially unable and unsuited for the care and custody of said child." At the time specified in the

writ, said judge, in chambers, "after," it is recited in his order, "hearing the pleadings, evidence and argument of counsel, . . . adjudged and decreed . . . that the said Mary E. Fuller remain in the care, custody and control of the said Aaron ·Graham, and that the petitioners herein, Harry and Ellen Fuller, . . . pay all costs in this behalf incurred." The original application for the writ was filed with the clerk of the District Court of.Harrison County on April 14, 1908, and, it seems, was entered on the trial docket of said court as cause No. 447. The answer of the respondents was filed with said clerk on April 27, 1908. Afterwards, to wit, on April 17, 1909, R. H. Fuller, who, it seems, was the person mentioned as Harry Fuller in the order of the judge above referred to, and who was the father of Mary E. Fuller, and the said Ellen Fuller, filed with the clerk in said cause docketed as No. 447, a writing purporting to be an amendment of their original application for the writ, in which they alleged that, at a time not specified, when the respondent Lucindy Graham was sick and needed her assistance, they permitted the child to go and live with the said Lucindy and Aaron Graham for the purpose of waiting upon and attending to the said Lucindy; and that after she got well the said Lucindy and Aaron refused to permit the child to return to her home. The relators further alleged in said amended application that they were able to "rear, educate and care for the said Mary," and prayed that "upon a final hearing thereof they have judgment restoring to them the possession and custody of the said Mary E. Fuller," and for "general and special relief." April 20, 1909, the respondents filed a plea setting up the order of the judge made in vacation as aforesaid as *res adjudicata* of the case as made by the amended application. On the same day the court rendered a judgment sustaining the plea and dismissing relators' application. The appeal is by the relators from the judgment of the court dismissing their suit.

*After stating the case as above.*—The contention of the relators is that the order made by the judge in vacation, because it was so made, necessarily was an interlocutory and not a final judgment, and therefore that it could not be pleaded in bar of their right to the relief they sought. The argument seems to be that because an order so made can not be appealed from (Pittman v. Byars, 100 Texas, 518, 101 S. W., 789), it is, therefore, interlocutory. The answer to that argument is that, whether a judgment can be appealed from or not, is not always the test by which to determine whether it is a final judgment or not, in the sense that it is conclusive as between the parties to the controversy it undertakes to adjudicate. That this is true is shown by the statement of the Supreme Court in the opinion disposing of the case we have just cited. "Though a judge of the District Court," said that court, "may decide certain matters in vacation and render judgment thereon, yet such judgment, whether interlocutory or final, is not the judgment of the court over which he presides, but is merely his judgment as a district judge sitting in vacation. In such case, unless a right of appeal be given by positive law, none exists." It will be noted that the Supreme Court recognizes the right of a district judge, in some cases, in vacation to render a *final* judgment, from

which an appeal, in the absence of a statute authorizing it, can not be prosecuted. Therefore, the fact that an appeal can not be prosecuted from a judgment rendered by such a judge in vacation can not be regarded as proving that his judgment so rendered is not a final one. In such a case it may be that an appeal can not be prosecuted, not because the judgment is not a final one, but because of the absence of a statute authorizing it. "The Constitution," said the Supreme Court in Thorne v. Moore, 101 Texas, 205, 105 S. W., 987, "leaves the regulation of appeals very largely to the Legislature. It does not itself pretend to give appeals from all of the orders of the judges or the courts. The fact that the Legislature may not have provided for appeals from orders made in the exercise of a power given by the Constitution can in no manner negative the existence of the power." But, though the reason urged by the relators is not, as we have shown, a valid one, should it be said, nevertheless, that an order of a judge made in vacation, in such a proceeding, is not a final judgment, in the sense that it is conclusive as against the parties as to the matters adjudged? The power conferred upon the district judge in such a proceeding is as broad and full as that conferred upon the District Court. Section 8 of article 5 of the Constitution; Thorne v. Moore, supra. It will not be questioned that a judgment of that court, in such a proceeding, purporting to finally dispose of the controversy, would be a final one. Why should the judgment of the judge, possessing no less power, purporting to finally dispose of the controversy, be any less a final one? We think a satisfactory reason for such a distinction can not be given, and therefore hold that the judgment rendered by the judge in vacation was conclusive as between the parties, so long as the conditions existing at the time it was rendered remained unchanged. And here, treating the proceedings in the court below as a continuation of the proceedings before the judge in vacation, as they are treated by the parties on this appeal and as they were treated below, in disposing of the appeal we might very well content ourselves with the remark that, as a finally disposed of cause, the court below should have stricken it from his docket. But it may be that the so-called amended application should not be treated as a continuation of the proceedings had before the judge, but as a second application for the writ. If the record should be viewed from that standpoint, it would be necessary to determine whether, so treating it, the judgment rendered by the judge in vacation could be *res adjudicata* of the controversy presented by the second application. The rule seems to be that "where the purpose of a writ of *habeas corpus* is to obtain the custody of children, the decision of the court in regard to the right of custody becomes *res adjudicata* and bars a second application on the same facts, but if a different state of facts and circumstances can be shown a second application may be entertained." 15 Am. & Eng. Ency. Law, p. 213; Pittman v. Byars, 51 Texas Civ. App., 83, 112 S. W., 106; Cormack v. Marshall, 211 Ill., 519, 67 L. R. A., 790; Mercein v. People, 25 Wend. (N. Y.), 64, 35 Am. Dec., 657; State v. Bechdel, 37 Minn., 360, 5 Am. St. Rep., 854; In re Sneden, 105 Mich., 61, 55 Am. St. Rep., 435; Weir v. Marley, 99 Mo., 484, 6 L. R. A., 672; In re Hamilton, 66 Kan., 754, 71 Pac., 817. In one of the cases (Cormack v. Mar-

shall) cited the Supreme Court of Illinois said: "In contentions aris-
ing over the custody of a child between the parents or other parties
asserting rights thereto, the proceeding is held to be but a private
suit, in which the public is not concerned, and upon this question the
authorities are so uniform that it can hardly be said that the question
is open. It is not regarded in the light of the infant contending for
his own liberty, but in the true light of other persons interested, or
claiming to be, contending for the custody of the infant; and until
the infant arrives at the age of discretion, his wishes are neither con-
sidered nor consulted. Adopting this view of the nature of the pro-
ceedings, the courts, and text writers as well, have uniformly taken
the view that in such proceeding the order of the court or judge hav-
ing competent jurisdiction is a final order, and is binding upon the
parties under the same facts and so long as the same conditions exist
as did at the time of the hearing and order." In another of the
cases (Mercein v. People) cited Chancellor Walworth declared that
"the principle of *res adjudicata* was applicable to a proceeding upon
*habeas corpus,* and that it could make no difference in the application
of the principle whether the first writ. was returnable before a court
of record, or a judge or commissioner out of court, for in neither
case ought the party suing out the writ to be permitted to proceed *ad
infinitum,* before the same court, or officer, or before another court or
officer having concurrent jurisdiction to review the former decision,
while the facts remain the same." And in the same case Page, Sen-
ator, said: "The proceedings before the chancellor, and the order
made by him, were between the same persons who were parties to the
controversy before Judge Inglis, and were in relation to the same sub-
ject matter sought to be retried before that judge. This being so, ac-
cording to adjudged cases, the proceedings before the chancellor were
a bar to any re-investigation of any matters which occurred previous
to the date of his final order. Such unhappy controversies as these
may endure until the entire impoverishment, or the death of the par-
ties, renders their farther continuance impracticable. If a final ad-
judication upon a *habeas corpus* is not to be deemed *res adjudicata,*
the consequences will be lamentable. This favored writ becomes an
engine of oppression, instead of the writ of liberty." In still another
of said cases (State v. Bechdel) the Supreme Court of Minnesota,
after referring to the rule in that State that a refusal under one writ
to discharge a prisoner is not a bar to the issuing of another writ
based upon the same state of facts, nor to a hearing and discharge
thereon, said: "But such cases are clearly distinguishable, we think,
both upon principle and authority, from those in which the writ is
sued out merely for the purpose of determining which of two parties
is entitled to the custody of an infant child. In the latter, the ques-
tion is not really whether the infant is restrained of its liberty, but
who is entitled to its custody? It is true that the charge is that the
child is unlawfully restrained, etc.; but the gist of this charge is not
that the child is unlawfully deprived of its liberty, but that such re-
straint is in prejudice of the right of the relators to its custody. The
case is really one of private parties contesting private rights, under
the form of proceedings on *habeas corpus.* In our judgment, in such

cases, both principle and considerations of public policy require the application of the doctrine of estoppel to judicial proceedings. We therefore hold that a former adjudication on the question of the right to the custody of an infant child, brought upon *habeas corpus*, may be pleaded as *res adjudicata*, and is conclusive upon the same parties upon the same state of facts."

In the case before us the action of the court below is questioned on the ground alone that the judgment rendered by the judge in vacation, because it was so rendered, was not a final one, and therefore could not be held to operate as a bar to the relief sought. In the light of the authorities cited in this opinion, and others which might be referred to, we do not think the contention should be sustained. Therefore the judgment will be affirmed.

### ON MOTION FOR A REHEARING.

It appears from the record that all the parties to the *habeas corpus* proceedings were residents of Harrison County, and that the judgment pleaded as *res adjudicata* was rendered by the judge while sitting in chambers at Longview, in Gregg County. Relators insist that at the time said judgment was rendered their suit was pending in the District Court of Harrison County, and for that reason, and because they were then residents of Harrison County, it can not be treated as a final judgment. It is not necessary to determine what their rights might have been had the suit been a pending one in said District Court at the time they invoked the power of the judge of said court to issue the writ and hear and determine their complaint. The facts are that their application was presented to the judge and he issued the writ on April 11, 1908, and that their said application was not filed with the clerk of said court until April 14, 1908. So, at the time it was so filed, by relators' choice their complaint was pending before the judge on his order directing the child to be brought before him at chambers in Longview. The filing of the application with the clerk did not operate as a dismissal of the proceedings pending before the judge as such. Indeed, the inference from the record is that relators continued the prosecution of their complaint before the judge at chambers in Longview to the judgment there rendered. To permit them afterwards to say his judgment was not a final one because in the meantime they had filed their application with the clerk as a suit before the court, in effect would be to hold that by such a course they could deprive the judge of the power possessed by him and invoked by them, in vacation to hear and finally determine their complaint. We do not think the power of the judge could be so controlled. Relators were entitled to a hearing and determination of their complaint, by either the judge as such or by the court, as they might choose; but they were not entitled to such hearing and determination by the judge, and, if dissatisfied with it, to a trial *de novo* by the court. Of course, the fact that relators were residents of Harrison County is no reason why a judgment of a tribunal selected by them elsewhere than in that county should not be binding upon them.

When the case was first before us it was urged by relators as a rea-

son why the judgment should be reversed that they had been deprived of a trial by a jury. On the record as made for this court it did not appear that relators had demanded a trial by a jury. It is clear that, before they could predicate error on such a ground, they must have demanded and been denied such a trial. With reference, however, to this insistence of relators, without expressing approval or disapproval of the conclusion there reached by the court, we again direct attention to the case of Pittman v. Byars, 51 Texas Civ. App., 83, 112 S. W., 103, cited in our opinion, where it was held, in a case like this one, proper demand therefor having been made, that the trial court did not err in refusing to grant a trial by a jury. The motion is overruled.

*Affirmed.*